# In the United States District Court for the Western District of Texas

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| **v.** § | |
| § | **SA-13-CR-13-XR** |
| **JOSE SOCORRO AVALOS-** § | |
| **MARTINEZ** | |

### ORDER

On this day came on to be considered Defendant's motion to dismiss indictment (docket no. 30).

### Background

Jose Socorro Avalos, a citizen of the Republic of Mexico, is charged in an indictment with illegal re-entry into the United States in violation of 8 U.S.C. §§ 1326 (a) and (b)(1). He became a conditional lawful permanent resident (LPR) of the United States on or about February 10, 1988. The conditional status was apparently removed on April 12, 1990. On or about July 21, 2000, Avalos applied to renew his LPR status.

On November 6, 1999, Avalos was arrested for allegedly driving while intoxicated (DWI). On July 24, 2000, he pled guilty to DWI and was convicted. This was his third conviction. Pursuant to the terms of the plea, he was sentenced to four years imprisonment, but the sentence of imprisonment was suspended and he was placed on probation/community supervision for ten years. If he was to be deported, a term of his probation required him to "immediately report to and notify the Bexar County Community Supervision and Corrections Department" if he legally entered the United States. *See* Docket 34-1, Judgment of Conviction.

On or about September 28, 2000, Avalos was arrested by U.S. immigration officials. The Government initiated removal proceedings against him, alleging that his third felony conviction

constituted an aggravated felony as defined by 8 U.S.C. § 1101(a)(43)(F).  On October 18, 2000, he was ordered removed from the United States to Mexico by an Immigration Judge.  He was immediately deported that same day.  Avalos did not appeal the removal order.[1]  Avalos acknowledges that when he was deported he was warned that he was permanently barred from returning to the United States.

On or about November 18, 2000, apparently unaware of Avalos's DWI conviction, immigration officials approved Avalos's July 2000 LPR renewal application.  It was delivered to his residence in San Antonio, Texas and his spouse hand-delivered the "green card" to him in Mexico.

On January 8, 2001, Avalos allegedly decided to cross the border into Texas.  During the August 29, 2013 hearing on Defendant's motion to dismiss, Avalos testified that he was with his wife and mother-in-law in a motor vehicle and crossing the bridge in Eagle Pass, Texas.  His mother-in-law was concerned that there would be trouble crossing the bridge given his past removal and a verbal dispute arose between them.  Avalos decided to leave their vehicle and he caught a taxi at the bridge.  Avalos testified that border patrol agents saw him leave the vehicle and enter a taxi at the bridge and that aroused concerns on their part.  When he presented himself before immigration officials they allegedly questioned him at length and asked him for his driver's license card and social security card, and took photographs and fingerprints of him.

---

[1] On March 1, 2001, the Fifth Circuit issued its decision in *United States v. Chapa-Garza*, 243 F.3d 921 (5th Cir. 2001).  In that decision the court addressed the question whether the defendant's conviction for Texas felony DWI was an aggravated felony conviction for sentence enhancement purposes.  The specific question was whether the defendant's conviction was for a crime of violence as defined in 18 U.S.C. § 16(b).  The Fifth Circuit concluded that the offense of felony DWI was not a crime of violence within the meaning of 18 U.S.C. § 16(b).  On July 3, 2001, the Board of Immigration Appeals issued its decision in *In re Olivares-Martinez*, 23 I. & N. Dec. 148, Interim Decision 3453, 2001 WL 767608 (BIA July 3, 2001).  Citing the Fifth Circuit's decisions in *Chapa-Garza* and *United States v. Hernandez-Avalos*, 251 F.3d 505 (5th Cir. 2001), the BIA concluded that in the Fifth Circuit, a Texas felony DWI is not a crime of violence as defined in 18 U.S.C. § 16(b), and subsequently a conviction for Texas felony DWI is not classifiable as a crime of violence conviction under 18 U.S.C. § 16(b) for purposes of removability.  Accordingly, in the Fifth Circuit such individuals are not removable under section 237(a)(2)(A)(iii) of the Act. The Fifth Circuit has held in *Iturbe-Covarrubias v. Gonzales*, 183 Fed. App'x. 425 (5th Cir. 2006) that despite the change in law declared in *Chapa-Garza*, there is no retroactive application.

Avalos testified that he told immigration officials that he was previously deported. Despite the permanent bar from returning into the United States, Avalos testified that three or four immigration officials discussed his entry and allowed him into the United States at the Eagle Pass port of entry.

Avalos returned to his residence in San Antonio, Texas. Sometime in 2008, Avalos went to the Social Security Administration and applied for a replacement social security card. His request was denied and he was told that his LPR card was not valid.

In 2012, Avalos's spouse completed an I-130 petition to enable Avalos to secure a visa and immigrate to the United States. In the Form G-325A filed in support of the I-130 application, which was signed by Avalos, misrepresentations or omissions were made regarding where Avalos had been living from June 1998 to 2012. See Gov't Exhibit 4.

On December 11, 2012, Avalos was arrested under this illegal re-entry charge. The indictment was filed on January 9, 2013.

### Defendant's Motion

Defendant argues that he was given consent to reenter the United States or alternatively, if the consent was "somehow vitiated", "by being allowed reentry, he was entrapped by estoppel." Secondly, Avalos argues that the charge is barred by the five-year statute of limitations governing these cases.

### Analysis

**Entrapped by estoppel**

The Court finds that Defendant's testimony regarding any January 8, 2001, crossing is not credible. Immigration and Customs Enforcement Agent Aurea Carranza testified that Defendant's A-file had no record of Defendant crossing into the United States in January 2001 at

the Eagle Pass port of entry.  Agent Carranza also testified that she reviewed at least three other government databases to determine whether any such crossing took place and found no record in any of the databases.  Agent Carranza testified that since 1995 automatic scanning and recording of fingerprints have taken place and that there was no record of Defendant being fingerprinted in January 2001.  Lastly, she testified that she was not aware of any case where an aggravated felon who had been deported had been allowed to enter the United States.  Defendant called no other witnesses to corroborate his version of events.  Notably, his wife and mother-in-law, although living in San Antonio, did not attend the August 29 hearing.  Prior to any post-October 18, 2000 crossing, Defendant was aware that he had been permanently barred from re-entry and misrepresented or omitted facts from the 2012 visa petition.  Had Defendant legally re-entered the United States as he claims, he was required to report to the Bexar County Community Supervision and Corrections Department.  The undisputed evidence establishes he never reported to that agency.  This lends further credence to the argument that Defendant did not lawfully re-enter the United States.

>In pertinent part, 8 U.S.C. § 1326 provides that any alien who
>
>> (1) has been arrested and deported or excluded and deported, and thereafter
>> (2) enters, attempts to enter, or is any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent.... shall be fined ... or imprisoned not more than 2 years, or both.

8 U.S.C. § 1326(a)(1)-(2).

The Fifth Circuit has held that section 1326 does not impose a requirement of specific intent nor does it provide that an alien's reasonable belief that he was legally entitled to reenter the United States as a defense to criminal liability. *See United States v. Trevino-Martinez*, 86 F.3d 65, 68 (5th Cir. 1996), *cert. denied*, 520 U.S. 1105 (1997).

Avalos makes no argument that he was not required to obtain any advance consent, he only argues that he was given consent by some unidentified border patrol or immigration agents at the Eagle Pass port of entry.

Permission to reapply for admission must be expressly given, 8 U.S.C. § 1326 (Attorney General must have "expressly consented to such alien's reapplying for admission"), and the Code of Federal Regulations provides for how this express permission may be obtained. *See* 8 C.F.R. § 212.2. This Court has been unable to locate any statute or regulation that expressly authorizes a border guard to grant the required express consent of the Attorney General. Defendant's counsel does not provide us any such authority. Other courts have rejected arguments similar to those advanced by Defendant. *See United States v. Flores-Gonzalez*, No. 08–cr–30164–DRH, 2009 WL 1033318 (S.D. Ill. April 17, 2009); *United States v. Sanchez-Peralta*, No. 97 CR. 536(LAP), 1998 WL 63405 (S.D. N.Y. Feb. 13, 1998); *United States v. Mancebo-Santiago*, 875 F. Supp. 1030 (S.D. N.Y. 1995).

The defense of entrapment by estoppel has been defined by the Second Circuit as follows:

> The defense of entrapment by estoppel is available to defendants "where the government procured the defendant's commission of the illegal acts by leading him to reasonably believe he was authorized to commit them." *United States v. Giffen*, 473 F.3d 30, 39 (2d Cir. 2006). The defendant must show that "the government, by its own actions, induced him to do those acts and led him to rely reasonably on his belief that his actions would be lawful by reason of the government's seeming authorization." *Id*. at 41.

5

> Accordingly, in order to raise an entrapment by estoppel defense to the crime of illegal reentry, Boothe must show that he had reentered the country 'in the mistaken but reasonable, good faith belief that he ha[d] in fact been authorized to do so,' by the government in its communications with him. *Id*. at 41–42 (*quoting United States v. Abcasis*, 45 F.3d 39, 43 (2d Cir.1995)).

*United States v. Boothe*, 405 Fed. App'x. 559, 560 (2nd Cir. 2011).

The Fourth Circuit has defined the defense somewhat differently. To establish the entrapment-by-estoppel defense, a defendant has to establish that: "(i) the Government affirmatively assured him that his reentry into the United States was lawful; (ii) he engaged in conduct in reasonable reliance on the Government's assurances; and (iii) a criminal prosecution based on his reentry ensued." *United States v. Garcia*, 288 Fed. App'x. 888, *1 (4th Cir. 2008). "To be able to assert the defense, however, a defendant has to show more than 'vague or even contradictory' statements by the government; 'he must demonstrate that there was 'active misleading' in the sense that the government actually told him that the proscribed conduct was permissible.'" *Id*. (internal citations omitted).

The Fifth Circuit has generally described the defense as follows:

> A criminal defendant may be entitled to raise a defense of entrapment by estoppel only 'when a government official or agent actively assures a defendant that certain conduct is legal and the defendant reasonably relies on that advice and continues or initiates the conduct.' *United States v. Spires*, 79 F.3d 464, 466 (5th Cir. 1996). *See also, United States v. Meraz-Valeta*, 26 F.3d 992, 996 (10th Cir.1994) (government must mislead the defendant and the defendant must reasonably rely on this misrepresentation) (*citing Cox v. Louisiana*, 379 U.S. 559, 568-71, 85 S.Ct. 476, 482-84, 13 L.Ed.2d 487 (1965); *Raley v. Ohio*, 360 U.S. 423, 437-39, 79 S.Ct. 1257, 1265-67, 3 L.Ed.2d 1344 (1959)). Hence, the government must actively mislead the defendant by inducing him to rely on 'an affirmative misrepresentation of the law by [the government official].' *United States v. Howell*, 37 F.3d 1197, 1204 (7th Cir.1994), *cert. denied*, 514 U.S. 1090, 115 S.Ct. 1810, 131 L.Ed.2d 735 (1995). In order for his reliance to be reasonable,

> the defendant must establish that 'a person sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries.'"

*United States v. Trevino-Martinez*, 86 F.3d 65, 69 (5th Cir. 1996).

Defendant's motion to dismiss the indictment on this ground is denied. As stated above, the Court finds, for purposes of this motion, that Defendant's testimony regarding any January 8, 2001 crossing is not credible. The Court makes no ruling on whether this defense may or may not be submitted to the jury should this case be tried.

**Limitations**

Defendant argues that he was "found" in the United States on January 8, 2001 for purposes of the five-year limitations period. The Fifth Circuit has recently stated the law in this area in *United States v. Compian-Torres*, 712 F.3d 203 (5th Cir. 2013). The Court stated in pertinent part:

> Section 1326(a) authorizes penalties for any previously deported alien who is thereafter 'found' in the United States. 8 U.S.C. § 1326(a). In the Fifth Circuit, 'a previously deported alien is 'found in' the United States when his physical presence is discovered and noted by the immigration authorities, and the knowledge of the illegality of his presence, through the exercise of diligence typical of law enforcement authorities, can reasonably be attributed to the immigration authorities.' *United States v. Santana–Castellano*, 74 F.3d 593, 598 (5th Cir. 1996). Thus, in order to be found, (1) immigration authorities must have specifically discovered and noted the alien's physical presence, and (2) knowledge of the illegality of the alien's presence must be reasonably attributable to immigration authorities. A § 1326 offense 'begins at the time the defendant illegally re-enters the country and does not become complete unless or until the defendant is found by the [ICE] in the United States.' *United States v. Corro–Balbuena*, 187 F.3d 483, 485 (5th Cir. 1999). '[T]he five year statute of limitations under § 1326 begins to run at the time the alien is 'found,' barring circumstances that suggest that the [ICE] should have known of his presence earlier, such as when he reentered the United States through an official border

> checkpoint in the good faith belief that his entry was legal.' *Santana–Castellano*, 74 F.3d at 597.

*United States v. Compian-Torres*, 712 F.3d at 207.

Defendant advances an alternative, but inconsistent argument, with this limitations defense. For purposes of the entrapment by estoppel defense, he argues that his alleged re-entry on January 8, 2001 was legal, as consent to enter was allegedly given by border patrol guards or immigration officials at the Eagle Pass port of entry. For purposes of the limitations defense, he argues that immigration authorities "found" him in the United States and the knowledge of the illegality of his presence was known on January 8, 2001.

Defendant's motion to dismiss the indictment on this ground is denied. As stated above, the Court finds, for purposes of this motion, that Defendant's testimony regarding any January 8, 2001, crossing is not credible. The Defendant was "found" and the knowledge of his illegal presence became known to immigration officials in 2012. The Court makes no ruling on whether this defense may or may not be submitted to the jury should this case be tried.

### Government's Request for a Rule 12.3. Notice of a Public-Authority Defense

The Government requests that in the event the Defendant is arguing that a public official authorized his entrance into the United States, the Defendant should comply with Fed. R. Crim. P. 12.3.

Fed. R. Crim. P. 12.3(a) states:

> (a) Notice of the Defense and Disclosure of Witnesses.
> (1) Notice in General. If a defendant intends to assert a defense of actual or believed exercise of public authority on behalf of a law enforcement agency or federal intelligence agency at the time of the alleged offense, the defendant must so notify an attorney for the government in writing and must file a copy of the notice with the clerk within the time provided for filing a pretrial motion, or at any later time the court sets. The notice filed with the clerk must be

under seal if the notice identifies a federal intelligence agency as the source of public authority.

(2) Contents of Notice. The notice must contain the following information:

(A) the law enforcement agency or federal intelligence agency involved;

(B) the agency member on whose behalf the defendant claims to have acted; and

(C) the time during which the defendant claims to have acted with public authority.

The Court agrees that Rule 12.3 is applicable in this case. The public-authority defense is closely related to the entrapment by estoppel defense. *See United States v. Strahan*, 565 F.3d 1047, 1051 (7th Cir. 2009). *See also United States v. Bulger*, --- F.Supp.2d ----, 2013 WL 1831211 at *14 (D. Mass. May 1, 2013) (setting deadline for notice of a public authority defense under Fed. R. Crim. P. 12.3).

Defendant must comply with Rule 12.3 on or before September 23, 2013. If the Defendant fails to comply with this rule, the court may exclude the testimony of any undisclosed witness regarding the public-authority/entrapment by estoppel defense. This rule does not limit the defendant's right to testify. Fed. R. Crim. P. 12.3(c).

## Conclusion

Defendant's motion to dismiss (docket no. 30) is denied.

SIGNED this 3rd day of September, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE